**SHEDD v. STATE LINE GENERATING CO.**

No. 4255.

Circuit Court of Appeals, Seventh Circuit.

June 5, 1930.

Rehearing Denied July 3, 1930.

Malcom Mccartney, of Chicago, Ill., and Louis B. Ewbank, of Indianapolis, Ind., for appellant.

John C. Lawyer, of Chicago, Ill., and Frederick C. Crumpacker, of Hammond, Ind., for appellee.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a decree dismissing appellant's suit because his complaint failed to state facts which, if true, would entitle him to the relief sought. The narrow question upon which the decision must turn involves the extent of an easement obtained through certain condemnation proceedings instituted in the Indiana state court by the Northern Indiana Public Service Company, an Indiana public utility corporation. These condemnation proceedings resulted in the utility's acquisition of a certain easement (hereinafter more fully described) in a 300-foot strip of land in Lake county, Ind., belonging in part to appellant.

The facts may be briefly stated. The Northern Indiana Public Service Company was, and is, an Indiana public utility corporation engaged in the business of "manufacture, transmission, distribution, purchase and sale of electrical current to towns and cities and to the public in general in the northern part of the State of Indiana." Through condemnation proceedings it acquired the right to erect its poles and string its wires over a 300-foot strip of land, an undivided one-half of which was owned by appellant in fee simple. Other public utilities, three in number, were engaged in a similar business and served a public living in adjacent territory. Two of these companies, the Public Service Company of Northern Illinois and the Commonwealth Edison Company, served Illinois consumers exclusively or chiefly. They are referred to by counsel as the two Illinois companies. The other company, Interstate Public Service Company, is an Indiana company serving Indiana customers. The four public utilities (the two Illinois companies and the two Indiana companies) caused, by co-operative action, the State Line Generating Company, the appellee herein, to be organized. It is an Indiana corporation and was organized for the purpose of generating electrical energy in wholesale quantities for the four named utilities who advanced the $28,500,000 necessary for the construction of its first unit. Its ultimate maximum generating voltage is estimated at 1,000,000 kilowatts. Appellee issued stock to the aforementioned utilities in the proportion which each contributed to the cost. Commonwealth Edison Company received 40 per cent., Public Service Company of Northern Illinois, 30 per cent., Northern Indiana Public Service Company, 20 per cent., and Interstate Public Service Company, 10 per cent. The four parties contracted that the current generated by appellee should

be distributed according to this same percentage.

Appellee's generating plant is located on land which is adjacent to the end of the 300-foot strip condemned. In order that current from this generating plant may reach the Commonwealth Edison Company's transformer, or may reach the distributing station of the Public Service Company of Northern Illinois, it must pass along the wires strung, or to be strung, over this right of way.

In disposing of this case, it is assumed: (a) That the scope of the easement acquired by Northern Indiana Public Service Company must be measured by the condemnation proceedings in the Indiana state court. (b) Threatened use of appellant's land in excess of this easement is a basis for injunctive relief. (c) Threatened use of appellant's land by one not entitled to enjoy the above-mentioned easement is the basis of injunctive relief. With these concessions made there remain but two questions. (1) Does the easement secured in the state condemnation proceedings permit of its use for the transmission of current for consumption in the State of Illinois by a utility other than the condemnor? (2) If question No. 1 be answered in the affirmative, is appellee, under the allegations of the complaint, entitled to the enjoyment of the easement?

Only an examination of the pleadings and findings and final decree in the condemnation proceedings can answer the first question. They are set forth in the complaint. We quote therefrom:

"Plaintiff is a public utility corporation.

"That it is now engaged in constructing, an electrical transmission line * * * and that the same varies in width from one hundred fifty (150) to three hundred (300) feet; and intends to use the property to be appropriated for a right of way for the erection, maintenance, operation, and repair of its said transmission lines," etc.

Appellant, the defendant in the condemnation proceedings, filed an answer wherein he alleged:

"That the use and purpose for which defendants' property is here sought to be appropriated is not to enable plaintiff to supply towns and cities and the public in general of Indiana with current, but said use and purpose is to secure for the plaintiff corporation and the Commonwealth Edison Company, an Illinois corporation, and the Public Service Company of Northern Illinois, an Illinois corporation, and the Interstate Public Service Company, an Indiana corporation, (1) conservation of capital investment and maintenance costs; (2) savings in the cost of electrical energy; and, (3) economies in operation and conservation of fuel.

"That part of defendant's property lying within the westerly 150 feet of the proposed 300-foot right of way is here sought to be appropriated for the purpose of providing a right of way for a super-power transmission line of 132,000 volts, over which large quantities of electrical energy generated by the State Line Generating Company, an Indiana corporation, may be transmitted into the State of Illinois and over a similar super-power transmission line in Illinois of the Commonwealth Edison Company, an Illinois corporation, and thence into the superpower transmission system of the Public Service Company of Northern Illinois, an Illinois corporation, for exclusive use in Illinois and states other than Indiana.

"There is no necessity for plaintiff to appropriate defendants' property, for the reason that plaintiff's present sources of supply of electrical energy and facilities, with reasonable development from time to time, are now and will be for a great many years ample and sufficient to enable plaintiff to supply towns and cities and the public in general of Indiana with electric current for heat, light and power purposes.

"That there is no necessity in any event for plaintiff to acquire more than a right of way of 150 feet in width where plaintiff seeks to appropriate 300 feet of right of way, or a right of way 75 feet in width where plaintiff seeks to condemn 150 feet of right of way."

The court found:

"(1) That the plaintiff was an Indiana corporation and has with a charter power to engage, in supplying communities in northern Indiana with light, heat and power, and furnishes electric energy to 105 cities, towns and communities with a population of about 250,000 inhabitants;

"That plaintiff intends to use the property sought to be appropriated for a right of way for the erection, maintenance, operation, repair and renewal of its electrical transmission lines to the public in general in the State of Indiana for heating, lighting and power purposes.

"(3a) That, in order that plaintiff may insure its customers reliable and continuous service, it is necessary for it to have a reserve capacity or supply of energy approximately equal to its maximum or peak load demand

for energy. That such a reserve capacity is used to furnish energy in case of interruption by accident or prearranged shutdown for repairs of the normal generating capacity. That the plaintiff is serving large industries and municipalities, and continuous, uninterrupted service is reasonably demanded by its customers.

"That there are two methods of securing this reserve supply of energy; (a) To install and keep in readiness for operation additional generating plants and equipments; (b) To have connections by transmission lines to and with adjoining utilities generating energy that may have an excess or reserve amount of energy, for the purpose of securing such energy as may be necessary.

"That the first method, i. e., installing and maintaining additional generating units, requires more capital investment and larger operating costs than the second method. That the plaintiff herein has heretofore made such a connection with the Public Service Company of Illinois at the west end of the line, extending from Highland to Michigan City, and will make an additional connection for that purpose with the Commonwealth Edison Company of Cook County, Illinois, at 108th street, and on the right-of-way described in the complaint in this case.

"That the plaintiff has entered into contracts with the Public Service Company of Illinois and the Commonwealth Edison Company of Cook County, Illinois, whereby it can draw upon one or both of those companies through such connections for energy from Illinois for reserve and emergency service. That, by said contracts, it is required to supply those companies, in case of their necessity, from its reserve energy.

"(3b) That the transmission lines to be built by plaintiff on the lands described in the complaint will be connected with the State Line Generating plant when it is completed. That the State Line Generating Plant is being built by the State Line Generating Company, a corporation, and is built for the purpose of producing electrical energy. That the plaintiff will purchase and receive energy from the State Line Generating Company, which energy will be used by plaintiff company in supplying its customers in Indiana, and will also be subject to the demand of the adjacent utility companies."

An examination of the above-quoted proceeding leaves no room for doubt as to the extent of the easement sought and obtained in the Indiana state court. It included the right to use the premises not only for the transmission of current to be used by the condemnor, but also permitted the use of said premises for carrying current which was to be used by other public utilities.

Even had the state court proceedings not specifically mentioned this use, the easement would have included it. For a public utility can best serve its patrons by making full use of its power plant. This is well illustrated in cases where water power is used to produce the electrical current. A condemnor could hardly be limited in such a case to a dam which only partially crossed a stream because, perchance, a dam that crossed the entire stream would produce more current than the condemnor required. If the condemnor in the case before us can secure its current cheaper by joining other utilities in erecting a common generating plant, its right (and perhaps its duty) to join in erecting such plant, is pretty clear. Likewise, in disposing of its excess supply of electrical power, its right to use its transmission lines to convey its current to another utility is, we think, as clear as its right to use such lines for the transmission of current to its customers. And this is so whether the purchasing utility distributed its current to customers within or without the state of which the condemnor is a resident. Such a sale of its excess current was indirectly for the benefit of the condemnor's own customers within the state of Indiana.

Nor can we accept as justifiable the refined distinction which appellant seeks to make between the right of condemnor to use the right of way and the condemnor's grant of such right to another utility to use its wires to secure the excess current from the common generating plant. The condemnor may contract to sell and deliver its current to another utility at the latter's distributing station, or it may sell such current at the generating plant and permit the purchasing company to use its transmission lines to carry away electrical current. Such use of its transmission lines would not be outside the field of its contemplated enjoyment. For such contemplated use, the commissioners who fixed the landowner's damage should, and doubtless will, include compensation. Receiving compensation for the easement which the condemnor acquired through its condemnation proceedings, plaintiff cannot complain of the latter's full use and enjoyment of the easement thus obtained, and for which it was required to make payment.

The decree is affirmed.